

**OBLIC**

OHIO BAR LIABILITY INSURANCE COMPANY

P.O. Box 2708, Columbus, Ohio 43216-2708

# DECLARATIONS

## PROFESSIONAL LIABILITY POLICY

### (THIS IS A CLAIMS-MADE AND REPORTED POLICY, READ CAREFULLY)

Policy No.  **F307703**                                    Firm Number: **1220149**

Item 1.  Named Insured(s) and Office Address:

**Wallace & Bache LLC**
**270 S Cleveland Massillon Rd**
**Suite B**
**Fairlawn, OH 44333**

Item 2.  **Policy Period: From: August 9, 2016     To: August 9, 2017** 12:01 A.M.,
Eastern Standard Time at the address of Named Insured as stated herein

Item 3.  Limits of Liability:     **$100,000**   to all claims arising out of the same,
related or continuing "**Professional
Services**"

**$300,000**   aggregate per policy period

Item 4.  Deductible Amount:     **$1,000**
(Includes Claims Expense)

Item 5.  Total Policy Premium     **$1,424**



**OBLIC**
OHIO BAR LIABILITY INSURANCE COMPANY

P.O. Box 2708, Columbus, Ohio 43216-2708

# DECLARATIONS

## PROFESSIONAL LIABILITY POLICY

### (THIS IS A CLAIMS-MADE AND REPORTED POLICY, READ CAREFULLY)

#### (Continued)

Policy Number: **F307703**          Firm Number: **1220149**

Item 6.        **Subject to Forms and Endorsements:**

| Form Numbers | Description |
| --- | --- |
| LPLP-1r | Policy Jacket |
| LPLE-26c | Policy Endorsement, Schedule of Insureds |
| LPLE-7k | Exclusion of Prior Acts Endorsement |
| LPLE-35b | Exclusion of Coverage for Specific Claims or Incidents |

This Declarations page when combined with the policy provisions and endorsements designated herein complete the contract of insurance numbered above.

_____

Duly Authorized OBLIC Representative



**OBLIC**
OHIO BAR LIABILITY INSURANCE COMPANY                    P.O. BOX 2708, COLUMBUS, OHIO 43216-2708

This endorsement, effective 12:01 A.M., **August 9, 2016**

Forms a part of policy number: **F307703**

Issued to: **Wallace & Bache LLC**

By the: **Ohio Bar Liability Insurance Company**

## EXCLUSION OF PRIOR ACTS ENDORSEMENT

In consideration of the premium charged it is agreed that the policy to which this endorsement is attached shall not apply to any **"Claim"** made and reported to the Company arising out of any act, error, omission or **"Personal Injury"** involving any of the below listed Insured(s) occurring prior to and/or between the periods indicated.

| INSURED: | EXCLUDED PRIOR TO: | EXCLUDED BETWEEN: |
|---|---|---|
| Daniel R. Bache | 04/30/2016 | |
| Jason D. Wallace | 04/30/2016 | |

This endorsement replaces Exclusion (i) subpart (3) ONLY, of the policy.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above numbered policy, other than as stated in this endorsement.

_____
Duly Authorized OBLIC Representative



**OHIO BAR LIABILITY INSURANCE COMPANY**

P.O. Box 2708, Columbus, Ohio 43216-2708

This endorsement, effective 12:01 A.M., **August 9, 2016**

Forms a part of policy number: **F307703**

Issued to: **Wallace & Bache LLC**

By the: **Ohio Bar Liability Insurance Company**

## POLICY ENDORSEMENT

It is agreed that the policy is amended to include as an Insured the individuals designated below:

### Schedule of Insureds

| Effective | Expiration | Insured Name | Full Time/Part Time Status |
|-----------|------------|--------------|----------------------------|
| 08/09/2016 | 08/09/2017 | Daniel R. Bache | F |
| 08/09/2016 | 08/09/2017 | Jason D. Wallace | F |

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above numbered policy, other than as stated in this endorsement.

Duly Authorized OBLIC Representative



**OBLIC**
OHIO BAR LIABILITY INSURANCE COMPANY                    P.O. Box 2708, Columbus, Ohio 43216-2708

This endorsement, effective 12:01 A.M., **August 9, 2016**

Forms a part of policy number: **F307703**

Issued to: **Wallace & Bache LLC**

By the: **Ohio Bar Liability Insurance Company**

## EXCLUSION OF COVERAGE FOR SPECIFIC
## CLAIMS OR INCIDENTS

In consideration of the premium charged, it is agreed that this policy shall not apply to any claim(s) relating to or arising from, directly or indirectly, those facts, circumstances, acts, errors or omissions listed below:

Name of Claimant: **Akron Public School Board of Education**

Date of Notice of Claim or Incident: **January 26, 2016**

Date of Alleged Error: **December 15, 2014**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above numbered policy, other than as stated in this endorsement.

_____
Duly Authorized OBLIC Representative



**OHIO BAR LIABILITY INSURANCE COMPANY**

**PROFESSIONAL LIABILITY CLAIMS - MADE AND
REPORTED POLICY**

**NOTICE**

Except to such extent as may otherwise be provided herein, the coverage of this policy is limited and is applicable to liability for only those **"Claims"** that are first made against the Insured and reported to the Company during the **"Policy Period"** or a relevant **"Extended Reporting Period."**

**PLEASE READ PARAGRAPH (i) ON PAGE 6 OF THE POLICY UNDER EXCLUSIONS.**

**THIS POLICY DOES NOT PROVIDE PRIOR ACTS COVERAGE FOR PERIODS WHEN UNINSURED!**

**OHIO BAR LIABILITY INSURANCE COMPANY**
**1650 Lake Shore Dr. • P.O. Box 2708**
**Columbus, Ohio 43216-2708**
(A stock insurance company, herein called the Company)

It is understood that the statements made in the application for insurance are incorporated into, and form a part of this policy, and are warranted by the Insured to be true or correct.  Any material misrepresentation thereof will render the policy null and without effect.  In reliance on such statements, the Company agrees with the Insured, as named in the Declarations made a part of this policy or defined as an Insured herein, in consideration of the payment of the premium and subject to the Limits of Liability, Exclusions, Conditions and other terms of this policy:

## INSURING AGREEMENT

**I. COVERAGE**

To pay on behalf of the Insured all sums which the Insured shall be legally obligated to pay as money damages because of any **"Claim"** first made against the Insured and reported in writing to the Company during the **"Policy Period,"** pursuant to **Condition VI** of this policy, and caused by:

(a)  an act, error, or omission of the Insured or any person for whose acts, errors or omissions the Insured is legally liable, in rendering or failing to render **"Professional Services"** for others in the Insured's capacity as a lawyer or Notary Public; or

(b) **"Personal Injury"** arising out of the **"Professional Services"** for others provided by the Insured as a lawyer or Notary Public; or

(c)  Acts, errors, or omissions by an Insured lawyer as an administrator, conservator, executor, guardian, trustee or in any similar fiduciary capacity, shall be deemed for the purpose of this policy to be the performance of **"Professional Services"**, provided that this policy shall not apply to any **"Claim"** based solely upon alleged error of the Insured in the exercise of investment judgment.   This policy shall not apply to any **"Claim"** made against any Insured arising out of any matters for which the Insured serves or acts in any fiduciary capacity regarding:

1. any business enterprise or charitable organization if not appointed to such position by a court of competent jurisdiction; or
2. any pension, union, welfare, profit-sharing, mutual, investment fund and/or trust; or
3. any fund, trust, or other investment in which any one or more of the following have some beneficial interest: any Insured under this policy, or any spouse, parent, sibling, grandparent, grandchild, child, or any other relative of any Insured under this policy, including, but not limited to in-law, step, foster, adoptive or half relationships;

and except as otherwise excluded or limited by the other terms, conditions and exclusions of this policy.

**II.  DEFINITIONS**

(a)  **"Advertiser's Liability"** means any of the following injuries arising out of the advertising of legal services by any Insured:

1. libel, slander or defamation of character;
2. infringement of copyright or trademark;
3. invasion of privacy; or
4. piracy or misappropriation of an idea.

(b)  **"Claim"** means a demand received by the Insured for money damages, including the service of suit or institution of arbitration or other alternative dispute resolution proceedings, against the Insured.  As

respects arbitration or other alternative dispute resolution proceedings, the Insured's participation in such proceeding shall not be conducted without the Company's prior approval. A **"Claim"** shall be considered first made and reported when the Company receives written notice of the **"Claim"** or of any event which could reasonably be expected to give rise to a **"Claim"** in accordance with **Condition VI.**

**"Claims"** is the plural of **"Claim."**

      (c) **"Claim Expense"** means the fees, costs, and expenses resulting from:
        1. the investigation, adjustment, defense and fees charged by an attorney designated by the Company to defend any **"Claim"**; and
        2. the appeal of a **"Claim,"** suit or proceeding arising in connection therewith, if incurred by the Company, or by the Insured with prior written consent of the Company;
        provided, however, **"Claim Expense"** does not include salaries or expenses of regular employees or officials of the Company, (other than attorneys engaged in the defense of any **"Claim,"** suit or proceeding) or of any Insured(s) under this policy.

The Company may, at its option, pay expense as it deems necessary to provide legal services to or for the benefit of the Insured to rectify an error or omission alleged against the Insured. The cost of such legal services shall be considered as **"Claim Expense"** hereunder.

      (d) **"Extended Reporting Period"** means the period or periods of time after the end of the **"Policy Period"** for reporting any **"Claim,"** suits or proceedings arising out of an act, error, or omission which occurred prior to the end of the **"Policy Period"** and which would have been covered by this policy but for its termination, and for which an endorsement providing an **"Extended Reporting Period"** has been purchased by an Insured pursuant to **Condition III** (A) or (C).

      (e) **"Effective Date"** as used in Exclusion (i) means the date on which coverage became effective under the first policy issued by the Company, provided the same or substantially similar coverage has been in force continuously without interruption under this or any prior policies issued by the Company.

      (f) **"Personal Injury"** means injury arising out of:
        1. False arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation, except humiliation maliciously inflicted by, at the direction of, or with the consent of the Insured.
        2. The publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy, except that which is maliciously published or uttered by, at the direction of, or with the consent of the Insured.

      (g) **"Policy Period"** means the period of time between the inception time and date shown in the Declarations and the time and date of termination, expiration or cancellation of coverage for the Named Insured, or the date that any other Insured is deleted from the policy, and specifically excludes any **"Extended Reporting Period."**

      (h) **"Predecessor Firm"** means any law firm no longer in existence from which the Named Insured previously acquired at least 50% of the assets, liabilities, and lawyers.

      (i) **"Professional Services"** shall be deemed, for the purposes of this policy, to include all services or activities performed by or on behalf of the Insured in a lawyer-client capacity; to also include volunteer services or activities performed by the Insured as a volunteer on behalf of the Ohio State Bar Association, and all general Ohio county and metropolitan bar association(s), or any non-profit organization that provides legal services on a pro-bono basis; and to also include services performed by the Insured as an arbitrator or mediator. **"Professional Services"** do not include services provided as an accountant/CPA, real estate

agent, insurance agent, financial planner or advisor, or in any other similar professionally-licensed capacity.

(j) **"Securities Activities"** shall mean any financial instrument, including but not limited to stocks and bonds or other financial investments, offered or sold to the public, or listed or traded on any national exchange or other organized securities or investment trading market.

## III. DEFENSE AND SETTLEMENT

With respect to such insurance as is afforded by this policy, the Company shall defend any **"Claim"** or suit against the Insured alleging such act, error, or omission and seeking money damages which are payable under the terms of this policy, and defend any **"Claim"** or suit seeking money damages arising out of **"Advertiser's Liability"** in connection with the Insured's advertising of legal services. However, the Company shall not be required to defend any such **"Claim"** or suit arising solely out of an alleged act, error, or omission for which coverage is excluded by the terms, conditions and exclusions of this Policy; and the Company may make such investigation and, with consent of the Insured, settle any **"Claim"** or suit as it deems expedient. The Company shall have the sole right to name defense counsel to represent the Insured in any **"Claim."**

The Insured may refuse to consent to any settlement or compromise recommended by the Company and elect to contest the **"Claim,"** suit or proceeding.  If such settlement or compromise is acceptable to the claimant, then the Company's liability shall not exceed the amount for which the Company would have been liable for money damages and **"Claim Expense"** at the time the **"Claim"** or suit or proceeding could have been settled or compromised, if judgment is ultimately rendered against the Insured in an amount greater than the money damages for which the **"Claim"** could have been settled by the Company.

It is further provided that the Company shall not be obligated to pay any **"Claim"**, judgment or award or undertake to continue defense of any suit or proceeding after the limit of the Company's liability has been exhausted by payment of judgments, awards, settlements, **"Claim Expense,"** or by deposit of the applicable limit of liability in a court of competent jurisdiction. The Company shall pay in addition to the applicable limits of liability, all **"Claim Expense,"** excluding any deductible amounts owed, provided, however,  **"Claim Expense"** incurred as a result of any **"Claim"** arising in whole or in part out of the **"Securities Activities"** of the Insured if otherwise covered by endorsement to this policy,  shall be included within the applicable limit of liability and shall be aggregated with the payment of any **"Claim,"** judgment, or award in exhausting said limit of liability.

If the Company's limits of liability hereunder are exhausted prior to the reduction of any pending **"Claim,"** suit or proceeding, by settlement, final judgment or final award, the Company shall have the right to withdraw from the further defense thereof by tendering control of the defense to the Insured.

## IV. PERSONS INSURED

Each of the following is an Insured under this policy to the extent set forth below:

(a) if the Named Insured designated in the Declarations is an individual, the person so designated but only with respect to the conduct of a law practice of which the individual is the sole proprietor;

(b) if the Named Insured designated in the Declarations is a partnership, the partnership so designated and any lawyers who are listed in the policy as partners thereof;

(c) if the Named Insured designated in the Declarations is a Professional Corporation or Professional Association, the Professional Corporation or Professional Association so designated and any lawyers listed in the policy who are stockholders or members thereof;

(d) any lawyer listed in the policy or other person who is an employee of the Named Insured;

(e) all former partners, shareholders or members of the Named Insured or any **"Predecessor Firm"** who were partners, shareholders or members at the time the acts, errors or omissions were committed, and any other person who previously qualified as an Insured under **IV. Persons Insured**, subparagraphs (b), (c), (d) or (f) but only if all of the following apply:

    1.  the act, error or omission giving rise to a **"Claim"** occurred prior to such person's deletion from coverage with the Named Insured;

    2.  the act, error or omission giving rise to a **"Claim"** occurred during a time period for which the person was previously insured by a policy issued by the Company to the Named Insured or any **"Predecessor Firm;"**

    3.  coverage for such act, error or omission is otherwise provided to the Named Insured under this policy.

(f) any lawyer listed in the policy acting as "of counsel" to the Named Insured, but only while performing services on behalf of the Named Insured.

(g) any lawyer who becomes a partner or member of, stockholder in, or employee of the Named Insured during the **"Policy Period,"** but only for **"Professional Services"** on behalf of the Named Insured. After such lawyer applies on forms provided by the Company, the Company may at its discretion extend to such lawyer coverage for acts, errors or omissions that occurred prior to the **"Policy Period"** subject to the terms and conditions of the policy; but nothing herein shall be binding upon the Company in exercising its right to decline such application for prior acts coverage. Any addition of a lawyer must be reported to the Company no later than 60 days after such lawyer is employed by or associated with the Named Insured.

## EXCLUSIONS

This policy does not apply:

(a) to any criminal, dishonest or fraudulent act, or failure to act;

(b) to any willful, intentional or malicious act, or failure to act;

(c) to any **"Claim"** made by an employer against an Insured who is or was a salaried employee of such employer;

(d) to any **"Claim"** arising out of bodily injury to any person, including sickness, disease or resulting death  or injury to, destruction or theft of any property, including the loss of use thereof;

(e) to any loss sustained by the Insured as the beneficiary or distributee of any trust or estate;

(f)

    1.  to any **"Claim"** arising out of the Insured's act, error, or omission as an officer, director, partner,  member, owner, employee or in a fiduciary capacity of any of the following:

        a. any business enterprise, non-profit or charitable organization unless appointed in a fiduciary capacity to such by a court of competent jurisdiction or

        b. any pension, union, welfare, profit-sharing, mutual, investment fund and/or trust; or

        c. any fund, trust, or other investment in which any one or more of the following have some beneficial interest: any Insured under this policy, or any spouse, parent, sibling, grandparent, grandchild, child, or any other relative of any Insured under this policy, including, but not limited to in-law, step, foster, adoptive or half relationships; or

    2.  to any **"Claim"** arising out of the Insured's act, error or omission as an elected public official, or as an employee of a governmental body, subdivision or agency;

(g) to any punitive or exemplary damages;

(h) to any **"Claim"** regarding **"Professional Services"** rendered, or that should have been rendered, for or in relation to any business enterprise or other entity not named in the Declarations if the percentage of ownership interest held in such business enterprise or entity, directly or indirectly, by any Insured and/or their spouse or collection of Insureds and/or their spouses exceeds, or exceeded, at any time, 10%.

(i) to any **"Claim"**:
1. arising out of any act, error, or omission occurring prior to the  **"Effective Date"** of this policy if the Insured knew or could have reasonably foreseen prior to the **"Effective Date"** that such act, error, or omission might result in any **"Claim"** or suit; or
2. if there is a prior policy which provides insurance for such **"Claim"** resulting from an act, error, or omission that occurred prior to the **"Effective Date"** of this policy, whether or not the available limits of liability of such prior policy are sufficient to pay such **"Claim"** and whether or not the deductible provisions and limits of liability of such prior policy are different from this policy; or
3. arising out of any act, error, or omission that occurred prior to the **"Effective Date"** of this policy unless such **"Claim"** would have been covered by a prior policy of insurance, but for the fact that the time in which a **"Claim"** could be first made or reported under the prior policy of insurance had expired.

(j) to any **"Claim"** arising out of notarized certification or notarized acknowledgment by an Insured of a signature without the physical appearance of the person who is or claims to be the person signing said instrument;

(k) to any **"Claim"** made by an Insured or former Insured against an Insured or former Insured;

(l) to any **"Claim"** arising out of any Insured's activities and/or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto, except if the Insured is deemed to be a fiduciary solely by reason of legal advice rendered with respect to any employee benefit plan;

(m) to any **"Claim"** based upon or arising out of any actual or alleged discrimination or actual or alleged sexual harassment by the Insured;

(n) to any **"Claim"** for money damages for:
1. return of monies or any other consideration provided to an Insured as fees or expenses for **"Professional Services"** rendered or for any other damages, including consequential damages and attorneys' fees, arising out of Insured's alleged failure to return or reimburse such fees or expenses;
2. restitution, fines, penalties, sanctions or any award of attorney's fees imposed against any Insured, and/or any other person or entity under any one or more of the following: Rule 11 of the Federal Rules of Civil Procedure, Rule 11 of the Ohio Rules of Civil Procedure, Ohio Revised Code Section 2323.51 (the "frivolous conduct" statute), or under any other federal, state or local statute or rules of procedure or common law designed to deter frivolous conduct by any party or attorney engaged in litigation.

(o) to any **"Claim,"** or any suit or proceedings in connection therewith, or the defense thereof, if and to the extent the **"Claim"** arises out of or in connection with **"Professional Services"** rendered or which should have been rendered in relation to any patent, trademark or copyright activities or transactions.

(p) to any **"Claim"** made outside the United States of America, its territories, possessions, or Canada; or to any **"Claim,"** including but not limited to any **"Claim"** first made in the United States of America, its

territories, possessions, or Canada, for which suit or arbitration is instituted or filed outside the United States of America, its territories, possessions, or Canada.

(q) to any **"Claim"** made against any Insured for losses resulting from the deposit or negotiation of a fraudulent or counterfeit check, draft or any such instrument drawn on an account, except a **"Claim"** or **"Claims"** for the loss of "Client Funds" on deposit in a trust account where such loss is attributable to disbursements made in reliance on such fraudulent or counterfeit instrument.   "Client Funds" as used in this Exclusion means funds held in a trust account by any Insured for the benefit of a client.  "Client Funds" do not include any amounts provisionally credited to a trust or other account from a fraudulent or counterfeit check, draft or instrument.

(r) to any "**Claim**" arising out of acts, errors or omissions by an Insured after joining the Named Insured or any "**Predecessor Firm,**" that occur after the "**Effective Date**" of this Policy, if such acts, errors or omissions were not rendered as a partner, shareholder, member, associate, owner, or employee of the Named Insured or of any "**Predecessor Firm**."

(s) to any **"Claim"** arising out of  **"Securities Activities"** as defined in this policy unless coverage for such has been provided by separate endorsement to this policy.

(t) to any **"Claim"**  arising solely out of an act, error or omission, or "**Personal Injury**" of a lawyer or law firm with whom the Insured shares office space or common office facilities, if that lawyer or law firm is not also an Insured under this policy.

# CONDITIONS

## I. LIMITS OF LIABILITY

The limits of liability stated in the Declarations as applicable to 'all **"Claims"** arising out of the same, related or continuing **"Professional Services"'** is the limit of the Company's liability for all money damages including interest, arising out of the same or related **"Professional Services"** without regard to the number of **"Claims,"** demands, suits, proceedings or claimants.  If a **"Claim"** is made arising out of theft of client funds by any person defined as an Insured under this policy, and coverage is available under CONDITION II. INNOCENT INSUREDS section of the policy for the benefit of another Insured, then the limit of liability for all **"Claims"** made and reported during the **"Policy Period"** shall, in the aggregate, not exceed $50,000.

The Company shall pay, in addition to the applicable limit of liability, all **"Claim Expense"**; however, **"Claims Expense"** incurred as a result of a **"Claim"** arising solely or in part out of the **"Securities Activities"** of the Insured shall be included within the applicable limit of liability, if otherwise covered by endorsement to this policy.

If any additional **"Claim"** is subsequently made which arises out of the same or related **"Professional Services"** as a **"Claim"** already made, any such **"Claim,"** whenever made, shall be considered first made within the **"Policy Period"** or **"Extended Reporting Period"** in which the earliest **"Claim"** arising out of such **"Professional Services"** was first made, and any such **"Claim"** shall be subject to the same limit of liability.

If the Named Insured purchases an **"Extended Reporting Period,"** the limit of liability stated in the Declarations as applicable to 'all **"Claims"** arising out of the same, related or continuing **"Professional Services"'** at the time the policy is terminated, is the limit of the Company's liability for any **"Claim"** arising out of the same, related or continuing services, which are first made during the **"Extended Reporting Period,"** unless at the option of the Named Insured, the limit of liability has been reduced when purchasing the "Extended Reporting Endorsement" under Condition III A.

Subject to the above provisions respecting 'all **"Claims"** arising out of the same related or continuing **"Professional Services,"**' the limit of liability stated in the Declarations as "aggregate" is the total limit of the Company's liability for all money damages (and **"Claim Expense"** if any **"Claim"** arises in whole or in part out of the **"Securities Activities"** of the Insured) arising out of all **"Claims"** to which each **"Policy Period"** applies or during each **"Extended Reporting Period."**

The inclusion in the policy of more than one Insured shall not operate to increase the limits of the Company's liability.

**Deductible.** The deductible amount stated in the Declarations, if any, shall be subtracted from the total amount of money damages and **"Claim Expense"** resulting from 'all **"Claims"** arising out of the same, related or continuing **"Professional Services,"**' and the Company shall be liable only for the difference between such deductible amount and the total amount of money damages and **"Claim Expense,"** up to the applicable limit of liability.  The deductible amount shall apply in the aggregate to all **"Claims"** made during the **"Policy Period."**
**Reimbursement to the Company.** All Insureds jointly and severally will be liable:

(a) For amounts the Company has paid in settlement of any **"Claim"** or satisfaction of judgments, including interest, in excess of the applicable policy limit of liability.

(b) With respect to **"Claims"** arising in whole or in part out of the **"Securities Activities"** of the Insured, for amounts the Company has paid in settlement of **"Claims"** or satisfaction of judgments, including interest and **"Claim Expense"** incurred, in excess of the applicable limit of liability.

(c) For any amounts paid by the Company within or up to the deductible amount stated in the Declarations.

(d) For any **"Claim Expense"** paid by the Company, if the Company is ultimately found in any court or arbitration proceeding not to have provided coverage for a **"Claim"** or suit.

## II. INNOCENT INSUREDS:  WAIVER OF EXCLUSION AND BREACH OF CONDITIONS

Whenever coverage under any provision of this policy would be excluded, suspended or lost because of:

(a) Exclusion (a) relating to a dishonest, fraudulent, or criminal act, or failure to act of an Insured while acting on behalf of the Named Insured and with respect to which any other Insured did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof, or;

(b) noncompliance with any condition relating to the giving of notice to the Company with respect to which any other Insured shall be in default solely because of the default or concealment of such default by one or more partners or employees responsible for loss or damage otherwise insured hereunder, the Company agrees to provide coverage under the terms of this policy with respect to each and every Insured who did not personally commit or personally participate in committing, or personally acquiesce in, or remain passive after having personal knowledge of, one or more of the acts, errors or omissions described in such exclusion or condition; provided further that if the condition be one with which such Insured can comply, after receiving knowledge thereof, the Insured entitled to the benefit of this **WAIVER OF EXCLUSIONS AND BREACH OF CONDITIONS** shall comply with such condition promptly after obtaining knowledge of the failure of any other Insured or employee to comply therewith.

Not withstanding the foregoing provisions of this **WAIVER OF EXCLUSIONS AND BREACH OF CONDITIONS,** this waiver shall apply only with respect to actual or compensatory damages. Specifically, but without limitation, this **WAIVER OF EXCLUSIONS AND BREACH OF CONDITIONS** does not apply to any punitive or exemplary damages, fines, penalties, sanctions, costs, attorney fees, or other damages in addition to actual or compensatory damages, such as damages that are percentage increases or multiples of

actual or compensatory damages.  Furthermore, if a **"Claim"** or **"Claims"** are made arising out of theft of client funds by a person defined as an Insured under this policy, the Company's maximum limit of liability for all such claims shall be limited to an aggregate sum of $50,000.  Proof of report of the theft of client funds to a relevant law enforcement agency shall be required before the Company will be liable for payment of any sums under this provision.

## III. EXTENDED REPORTING PERIOD ENDORSEMENT/EXTENSION TO REPORT A CLAIM

### A. PURCHASED BY OR FOR NAMED INSURED

In case of cancellation or nonrenewal by either the Named Insured or the Company, any Insured shall have the right, upon payment of an additional premium not more than 30 days after termination of the policy, to have an **"Extended Reporting Period"** endorsement issued to the Named Insured providing coverage for any **"Claim"** first made subsequent to the termination of the policy and reported to the Company during the applicable **"Extended Reporting Period,"** provided it was caused by an act, error or omission occurring prior to the end of the **"Policy Period,"** or **"Personal Injury"** which occurred prior to the end of the **"Policy Period,"** and otherwise covered by the policy. The additional premium shall be computed in accordance with the Company's rules, rates, rating plans and premiums in effect on the effective date of the applicable endorsement.

The Limit of Liability applicable to any **"Claim"** or **"Claims"** first made during the **"Extended Reporting Period"** set forth above shall be the amount shown in Item 3 and Item 4 of the Declarations, but at the option of the Named Insured the Limit of Liability shown in Item 3 and Item 4 of the Declarations can be reduced.

The right to the **"Extended Reporting Period"** under this section shall not be available to any Insured where cancellation or nonrenewal by the Company is for failure of the Named Insured to pay the premium when due, or for failure to pay any deductible amount when due under this policy, or due under a prior policy of insurance issued by the Company.

### B. AUTOMATIC EXTENSION TO REPORT A CLAIM

An extension is automatically provided without additional charge, if a **"Claim"** is first made against the Insured during the **"Policy Period"** and reported to the Company within 30 days after the expiration or cancellation of this policy, and which is otherwise covered by this policy**.**

### C. EXTENDED REPORTING PERIOD: *INDIVIDUAL INSURED*

(a) If this policy was issued to a corporation or partnership and if any individual attorney covered under this policy (Individual Insured) ceases the private practice of law during the **"Policy Period",** that Individual Insured shall have the right to apply to the Company for a Non-Practicing Extended Coverage Endorsement (NPEC), provided that such Individual Insured shall not have the right to apply for an NPEC unless she/he has been consecutively insured by the Company under the above-referenced policy, or any prior policy issued by the Company, for not less than 12 months immediately past (365 days) preceding the date such Insured withdraws or retires from the practice of law.

(b) To obtain the NPEC Endorsement, the Individual Insured must deliver to the Company a completed, signed application, and if accepted by the Company, pay the appropriate additional premium within thirty (30) days after the date of the Individual Insured's cessation from the private practice of law. Upon payment of the additional premium, the Company will issue an endorsement providing an **"Extended Reporting Period"** in accordance with the Company's rules, rates, rating plans and premiums in effect on the effective date of the applicable NPEC. This endorsement will cover **"Claims"** first made against the Individual Insured and reported to the Company during the applicable **"Extended Reporting Period"** for acts, errors or omissions, or **"Personal Injury"** which occurred prior to the date of the Individual Insured's retirement or

withdrawal from the private practice of law, and otherwise covered by the policy. The NPEC shall not provide coverage to any Insured where there is coverage provided by another insurance policy.

(c) The NPEC Endorsement provided for under this section III, Part C, *INIDIVIDUAL INSURED* shall not be obtained by or issued to any Individual Insured under any of the following circumstances:

1. Failure of the Named Insured or any Individual Insured to pay a premium or deductible when due;
2. The failure of the Named Insured or any Individual Insured, after a demand by the Company, to reimburse the Company for such amounts the Company has incurred or paid in connection with any **"Claim"** or judgment in excess of the applicable Limit of Liability, or within the amount of the applicable deductible;
3. Suspension, revocation or surrender of the Individual Insured's license to practice law, provided that, in the case of such surrender, it arises from the pendency or threat of disciplinary action;
4. Conviction of the Named Insured or any Individual Insured of a felony;
5. Purchase of an **"Extended Reporting Period"** Endorsement under **Section III, Part A** above.
6. Failure of the Individual Insured to meet the underwriting criteria of the Company at the time the application for the NPEC is made to the Company, as determined by the Company's Underwriting Guidelines and General Rules.

(d) Subject to the provisions of **Conditions - Section I**, the Company will provide a new limit of liability applicable to any **"Claim"** first made and reported to the Company during the **"Extended Reporting Period"** for the Individual Insured which shall be an amount equal to those amounts shown in Item 3 of the Declarations, or in any lesser amount provided by the Company on the date the NPEC Endorsement is issued. Such aggregate limit shall not apply separately to each annual period or portion thereof, but rather to the total **"Extended Reporting Period"** as indicated in the NPEC Endorsement.

## IV. ARBITRATION

The Company shall also defend any **"Claim"** insured herein in the event such **"Claim"** can, by agreement with the claimant, be contested by arbitration, provided always that said agreement does not result in the abandonment or waiver of any defense available to the Insured. The Company shall be entitled to exercise all the Insured's rights in the choice of arbitrators and in the selection of sites for arbitration proceedings involving a **"Claim"** covered by this policy.

## V. OTHER INSURANCE

Subject to the limitations of coverage as set forth in Exclusion (i), if the Insured has other insurance against a **"Claim"** covered by the policy, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance and shall then apply only in the amount by which the applicable limits of liability of this policy exceed the sum of the applicable limits of liability of all such other insurance.

If two or more policies of insurance issued by the Company apply to the same **"Claim"** for which the Company's insureds are jointly and severally liable, the Company's liability under each such policy shall be determined by the proportion of that policy's applicable limit of liability to the sum of the limits of all policies issued by the Company and applicable to the **"Claim."** Regardless of the number of insureds, or the total liability of all such insureds, the Company's liability shall not exceed an amount equal to highest limit of liability of any one policy applicable to such **"Claim."**

In the event that this policy is treated as excess insurance, only **"Claim Expense"** incurred as a result of any **"Claim"** arising in whole or in part out of the **"Securities Activities"** of the Insured shall be included within the applicable limit of liability.

## VI. NOTICE OF CLAIM OR SUIT, OR POTENTIAL CLAIMS

Upon the Insured's becoming aware of any acts, errors, or omissions which would reasonably be expected to be the basis of a **"Claim"** or suit covered hereby, written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable, together with the fullest information obtainable.

If a **"Claim"** is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by the Insured or the Insured's representative.

If during the **"Policy Period"** or any **"Extended Reporting Period,"** the Company shall be given written notice of any act, error, or omission which could reasonably be expected to give rise to a **"Claim"** against the Insured under this policy, any **"Claim"** which subsequently arises out of such act, error, or omission shall be considered to be a **"Claim"** reported during the **"Policy Period"** or **"Extended Reporting Period"** in which the written notice was received.

## VII. ASSISTANCE AND COOPERATION OF THE INSURED

The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization other than an employee of any Insured, who may be liable to the Insured because of any act, error, or omission with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his or her own cost, voluntarily make any payment, assume any obligation or incur any expense.

In the event that the Insured's attendance is required at the Insured's deposition, mediation, arbitration, trial or hearing, the Company, at the request of any such Insured, will reimburse the Insured for the time incurred in such matters at $250 for each day where the Insured's attendance was required for at least four or more hours, subject to an aggregate amount of $2,500 total for any one **"Claim."** The Company's aggregate liability for such reimbursement for all **"Claims"** reported during the **"Policy Period"** shall not exceed $5,000.

The Insured's time, personal expenses and expense of copies of documents necessary for the investigation or defense of a **"Claim"** shall not be charged to the Company and shall not be payable as **"Claim Expense."**

## VIII. ACTION OR SUIT AGAINST COMPANY

No suit or action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy. Any suit or other action must be brought within one year of the event giving rise to such suit or action.

No person or organization shall have any right under this policy to join the Company as a party to any suit or action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or the Insured's legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

## IX. SUBROGATION

In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefore against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

## X. NOTICE OF CHANGES; NOTICE IN GENERAL

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an officer or duly authorized representative of the Company. Notice of any change by the Company, or of any other matter concerning the Company and any Insured, shall be deemed adequate if provided to the Named Insured at the last address for the Named Insured provided to the Company.

## XI. ADDITIONS OR DELETIONS OF PERSONS INSURED

Any additions or deletions of a person or persons insured must be reported to the Company or any of its authorized agents immediately, but as respects additions in no event later than 60 days after the person or persons to be insured has first been employed by or associated with the Named Insured.

Any additions of a person or persons to be insured will require the payment of an additional pro-rated premium for the current **"Policy Period."** Any deletions will result in a pro-rated refund of premium from the date the Insured person or persons are no longer associated with or employed by the Named Insured, or the date the Company is advised of the date of the deletions of the insured person or persons, whichever is later in time.

## XII. ASSIGNMENT

The interest hereunder of any Insured is not assignable, including but not limited to breach of contract or bad faith actions or suits that may be brought against the Company. If the Insured shall die or be adjudged incompetent, this policy shall cover the Insured's legal representative as the Insured with respect to liability previously incurred and covered by this policy.

## XIII. CANCELLATION OR NONRENEWAL

## A. CANCELLATION

Policies that are not renewals of coverage, in effect for 90 days or less, may be declared null and void by the Company immediately by written notice mailed to the Named Insured for the reasons listed in 2.a. or 2.b. below. The Company will return any paid premium to the Named Insured.

Policies that are not renewals of coverage, in effect for 90 days or less, may be cancelled by written notice of cancellation mailed to the Named Insured at least 10 days before the effective date of cancellation for any one or more of the reasons listed in 2.c.- 2.g. below. The Company will refund any paid premium on a pro-rata basis. The Named Insured shown in the Declarations may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

With respect to a policy which has been in effect for more than 90 days, or that is a renewal of any policy the Company issued:

(1) The Named Insured shown in the Declarations may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

(2) The Company may cancel this policy only for one or more of the following reasons, except as provided in paragraph 6 below:
   a. The Insured has failed to pay a premium when due;
   b. Discovery of fraud or material misrepresentation in the procurement of this insurance or with respect to any **"Claims"** submitted thereunder;
   c. Discovery of a moral hazard or willful or reckless acts or omissions on the part of the Insured which increases a hazard insured against (as an example, an Insured who has been suspended or disbarred from the practice of law in any jurisdiction);

    d. The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract**;**

    e. Loss of applicable reinsurance or a substantial decrease in applicable reinsurance , if the Superintendent of Insurance has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in the applicable reinsurance, or to obtain replacement coverage;

    f. Failure of an Insured to correct material violations of safety codes;

    g. A determination by the Superintendent of Insurance that the continuation of the policy by the Company would create a condition that would be hazardous to the policyholders or the public.

(3) The Company will mail written notice of cancellation to the Named Insured, and agent if any, at the last mailing addresses known to the Company. Proof of mailing will be sufficient proof of notice.

(4) The Company will mail written notice of cancellation at least:

    a. 10 Days before the effective date of cancellation, if the Company cancels for nonpayment of premium and the policy has been in effect for more than 90 days or the policy is a renewal of coverage; or

    b. 30 Days before the effective date of cancellation, if the Company cancels for a reason stated in 2.b. through 2g. above, unless such cancellation is within 90 days or less of the effective date, and such policy is not a renewal of coverage. In such event, notice that the policy is null and void shall be effective immediately upon mailing for 2.a. or 2.b. above, and 10 days before the effective date of cancellation for 2.c.- 2g. above.

(5) The notice of cancellation will state the effective date of cancellation. The policy period will end on that date.  The notice will also contain the date of the notice and the policy number, and will state the reason for cancellation.

(6) Policies written for a term of more than one year may be cancelled by the Company for any reason at an anniversary date, upon 30 days written notice of cancellation.

(7) If this policy is cancelled, the Company will send the Named Insured any premium refund due. If the Company cancels, the refund will be pro-rata. If the Named Insured cancels, the refund may be less than pro-rata. The cancellation will be effective even if the Company has not made or offered a refund.

## B. NONRENEWAL

(1) If the Company elects not to renew this policy, the Company will mail written notice of nonrenewal to the Named Insured, and agent if any, at the last mailing addresses known to the Company. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

(2) The Company will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

(3) Proof of mailing will be sufficient proof of notice.

## XIV. LIMITED LEGAL FEE AND EXPENSE COVERAGE FOR DISCIPLINARY ACTIONS

The Company shall reimburse the Named Insured up to $2,500 per **"Policy Period"** for reasonable fees, costs and expenses for legal services charged by a lawyer, other than any lawyer insured under this policy, to defend

an Insured regarding a disciplinary complaint or proceeding based on allegations of professional misconduct in performing **"Professional Services"** for others. The Insured must first learn of the grievance during the **"Policy Period"** and report the grievance in writing to the Company during the **"Policy Period."** Further,  the complained of acts, errors or omissions must have occurred during a period of time in which the Insured had claims-made and reported lawyers professional liability insurance in force.

In the event that any certified grievance committee, disciplinary counsel or similar disciplinary authority elects to file a formal complaint against an Insured, an additional amount of up to $7,500 if the Insured is rated in full-time practice, or $5,000 if rated in part-time practice, will be provided under this policy in the defense thereof, reimbursable to the Named Insured.

The Insured shall have the right to select the lawyer who is to defend such Insured against any disciplinary complaint or proceeding.

At the option of the Insured, the Insured may request the assistance of the Company in selecting a lawyer.

This coverage applies only to such legal services, costs and expenses incurred in defending an Insured against such proceeding. This coverage does not apply to monetary awards of any kind, judgments or settlements relating to or resulting from the institution of disciplinary complaints or proceedings.

The Deductible shall not apply to any payments made under this provision. Further, any payments made under this provision will not reduce the Limits of Liability.
The maximum amount payable under this policy for legal services, costs and expenses arising from disciplinary complaints or proceedings shall not exceed $20,000 in the aggregate, or $10,000 in the aggregate if the policy issued is for a part-time practice, regardless of how many disciplinary proceedings or complaints are made and reported to the Company during the **"Policy Period**."

## XV.  SUBPOENA ASSISTANCE, CLAIMS REPAIR AND AVOIDANCE, RISK MANAGEMENT

At the Company's discretion, the Company will provide to an Insured hereunder risk management services and assistance, assistance in responding to subpoenas directed to an Insured prior to a **"Claim"** being made against an Insured, and assistance in mitigating potential damages caused by a negligent act, error or omission prior to a **"Claim"** made as a result thereof.

The Company will agree to pay any **"Claim Expense"** incurred by the Insured with the Company's advance written consent for these "pre-claim" services, subject to the Limits of Liability set forth herein, but not subject to the Deductible.

## XVI. ENTIRE CONTRACT

By acceptance of this policy, the Insured agrees that the statements in the Declarations and in the Insured's application for this policy are true and correct and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company relating to this insurance.

## XVII. SPECIAL STATUTES

Any and all provisions of this policy which are in conflict with the statutes of the state wherein this policy is issued are understood, declared and acknowledged by this Company to be amended to conform to such statutes.

In witness whereof, the Company designated on the Declarations page has caused this policy to be signed by two duly authorized officers of the Company and countersigned on the Declaration page by a duly authorized representative of the Company.

_____          _____

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**I. The policy does not apply:**

    A.  Under any Liability coverage, to bodily injury or property damage:
1. with respect to which an Insured under the Policy is also an Insured under a nuclear energy liability issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such Policy but for its termination upon exhaustion of its limit of liability; or
2. resulting from the hazardous properties of nuclear material an with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or, had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material if:
1. the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of an Insured or (b) has been discharged or dispersed therefrom;
2. the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
3. the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

**II. As used in this exclusion:**

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material

    1. containing byproduct material and

    2. resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility;

"nuclear facility" means

a. any nuclear reactor;
b. any equipment or device designed or used for,
    1. separating the isotopes of uranium or plutonium,
    2. processing or utilizing spent fuel, or,
    3. handling, processing or packaging waste;
c. any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
d. any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
"property damage" includes all forms of radioactive contamination of property.

## WHAT TO DO IN CASE OF A CLAIM

**In the event any Insured directly or indirectly becomes involved in any situation which any Insured believes may result in a "Claim" against any Insured, that Insured should immediately report it to an OBLIC Claims representative.**

**All "Claims" must be reported in writing by mail, hand delivery to the Company, or by facsimile transmission the receipt of which is confirmed by the Company in writing. Telephone notice and/or electronic message (e-mail) is NOT sufficient to constitute notice under the Policy.**

Telephone: 614/488-7924 or 1-800/227-4111
Fax: 614/488-7936
Mailing Address: Ohio Bar Liability Insurance Company
1650 Lake Shore Drive
Post Office Box 2708
Columbus, Ohio 43216-2708

# WARNING
# Any person who, with intent to defraud or knowingly facilitating a fraud against an insurer, submits an application or files a "Claim" containing a false or deceptive statement, is guilty of insurance fraud.