## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| CLEVELAND HEIGHTS- UNIVERSITY HEIGHTS SCHOOL DISTRICT BOARD OF EDUCATION, 2155 Miramar Blvd., University Heights, OH 44118, | ) ) ) ) ) | CASE NO. 5:17-cv-00883 JUDGE: DAN A. POLSTER |
| Plaintiff, | ) ) ) | **DEFENDANTS' WALLACE, BACHE, AND WALLACE AND BACHE LLC'S, JOINT** |
| v. | ) ) | **ANSWER AND COUNTER CLAIM** |
| JASON D. WALLACE, WALLACE & BACHE, LLC, 270 S. Cleveland Massillon Road, Fairlawn, OH 44333, | ) ) ) ) ) |  |
| and | ) ) |  |
| DANIEL R. BACHE, WALLACE & BACHE, LLC, 270 S. Cleveland Massillon Road, Fairlawn, OH 44333, | ) ) ) ) ) |  |
| and | ) ) |  |
| WALLACE & BACHE, LLC, c/o Its Statutory Agent: Daniel R. Bache, 270 S. Cleveland Massillon Road, Fairlawn, OH 44333, | ) ) ) ) ) ) |  |
| Defendants. | ) ) ) ) ) ) ) ) ) ) ) |  |

1

Now come the Defendants, and for their Joint Answer to Plaintiffs' Complaint, state as follows:

## ANSWER

1. As to the allegations set forth in Paragraph 1, admit that this is an action for fees in an Administrative Proceeding under the Individuals with Disabilities Education Act (IDEA). Further answering, Defendants deny the remaining allegations set forth in Paragraph 1 of the Complaint.

2. Defendants admit the allegations set forth in Paragraph 2 of the Complaint.

3. Defendants admit the allegations set forth in Paragraph 3 of the Complaint.

4. As to the Allegations set forth in Paragraph 4 of the Complaint, Defendants' admit Defendant, Jason D. Wallace, is an attorney, licensed to practice law in the State of Ohio, who represented Ayan Burton ("Student" or "Ayan"), an adult over 18 years of age who resided within the Cleveland Heights – University Heights City School District (CHUH) during the 2014-2015 school year; admit Attorney Jason Wallace represented Student in an administrative special education due process proceeding conducted pursuant to IDEA; and, admit CHUH never completed an evaluation to determine whether Ayan should be identified as eligible to receive special education and related services under the Individuals with Disabilities Education Act (IDEA) or Section 504 of the Rehabilitation Act of 1973 (504) despite finding "Ayan has been diagnosed with Adjustment Disorder/Conduct (4/1/2015) and Depressive Disorder (1/16/2013). *His associated behaviors and reported anxiety adversely affect his educational functioning*", (emphasis added) *see* attached

Exhibit 1 PEX P101-102[1], which indicates qualification under the IDEA according to 34 C.F.R. 300.8, and Dr. Johnston's agreement with that statement. Doc #: 1-11, PageID #: 148.

5. Defendants admit the allegations set forth in Paragraph 5 of the Complaint.

6. Defendants admit the allegations set forth in Paragraph 6 of the Complaint.

7. As to the allegations set forth in Paragraph 7 of the Complaint, Defendants admit Defendant, Roderick Linton Belfance, LLP, (RLB) is a law firm located at 50 S. Main Street, Akron, Ohio 44308; further answering, Defendants aver Defendants Jason Wallace and Daniel Bache worked under the RLB name and were listed as associates and members of RLB, during the certain, relevant periods of the aforementioned administrative proceedings.

8. Defendants admit the allegations set forth in Paragraph 8 of the Complaint.

9. Defendants admit the allegations set forth in Paragraph 9 of the Complaint.

10. Defendants admit the allegations set forth in Paragraph 10 of the Complaint.

11. As to the allegations set forth in Paragraph 11 of the Complaint, Defendants admit on or about November 11, 2014, Ayan Burton ("Ayan") was in an altercation with two other students who attended CHUH; admit part of the altercation was recorded on video; and, admit Ayan was later arrested. Further answering, Defendants deny all other allegations in Paragraph 11.

12. Defendants admit the Doc #: 1-6 speaks for itself.

---

[1] Defendants cite to the Petitioner's Exhibits as PEX and the page numbers as P___. A Praecipe for the Preparation and Transmission of the Administrative Record was file October 2, 2017 with the Ohio Department of Education. Notice of the filing of the praecipe was filed with the Court.

13. As to the allegations set forth in Paragraph 13 of the Complaint, Defendants admit the District expelled Ayan for this conduct; placed him in the Alternative to Education Program (AEP), a de facto expulsion program where Ayan was not allowed to attend the CHUH campus, nor allowed to attend any CHUH events or extra-curricular activities, then stated he would enter the Options program, yet remained in the AEP setting. Further answering, Defendants deny all other allegations in Paragraph 13.

14. As to the allegations of Paragraph 14 of the Complaint, Defendants admit Ayan and/or his parent filed an IDEA Due Process Complaint (DPC), Doc #: 1-7; and, admit the DPC speaks for itself. Further answering, Defendants deny all other allegations in Paragraph 14 of the Complaint.

15. Defendants admit the DPC contained the error of "Ayan is a student protected by Title 7…"; and, admit the DPC also alleged Ayan suffered from multiple disabilities and that he was bullied. Further answering, Defendants deny all other allegations of Paragraph 15 of the Complaint.

16. Defendants admit Ronald E. Alexander was appointed as the administrative law judge; i.e., Impartial Hearing Officer ("IHO") to hear the case on or about February 12, 2015; and, Defendants admit all IHO costs are born by school districts pursuant to O.A.C. § 3301-51-05(K)(16)(d).

17. As to the allegations set forth in Paragraph 17 of the Complaint, Defendants admit the District the District filed a response to the February 9, 2015 DPC on/or about February 23, 2015; admit CHUH retaliated against Ayan and Defendants by threatening, harassing and intimidating Ayan and Defendants by placing Ayan and Defendants on notice of the District's intent to seek fees without doing any investigation into the allegations of the DPC prior to issuing the response as evidenced through the testimony of Jeff Johnston during the administrative hearing and recorded in the transcript. *See* 12/18/15 Tr.

pg(s)190-243; Doc #: 1-11, PageID #(s): 124, 126, 128-129 Further answering, Defendants deny all other allegations alleged in Paragraph 17 of the Complaint.

18. As to the allegations of Paragraph 18 of the Complaint, Defendants admit Defendant Wallace amended the February 9, 2015 Due Process Complaint on or about March 16, 2015; and, admit Doc #: 1-8 speaks for itself. Further answering, Defendants deny all other allegations alleged in Paragraph 18 of the Complaint.

19. As to the allegation set forth in Paragraph 19 of the Complaint, Defendants admit the Amended Due Process Complaint alleged that "Student is a student with multiple disabilities." Further answering, Defendants deny all other allegations in Paragraph 19 of the Complaint.

20. As to the allegations set forth in Paragraph 20 of the Complaint, Defendants admit Amended Due Process Complaint alleged that Student was "severely bullied and harassed due to his disabilities and protected status and the District did nothing to prevent this despite knowing of this bullying and harassment." Further answering, Defendants deny all other allegations in Paragraph 20 of the Complaint.

21. As to the allegations set forth in Paragraph 21 of the Complaint, Defendants admit the Amended Due Process Complaint alleged that Ayan should have had a manifestation determination hearing. Further answering, Defendants deny all other allegations of Paragraph 21 of the Complaint.

22. As to the allegations set forth in Paragraph 22, Defendants admit the Amended Due Process Complaint also alleged that the District failed to evaluate Ayan for a disability. Further answering, Defendants deny all other allegations contained in Paragraph 22 of the Complaint.

23. As to the allegations set forth in Paragraph 23 of the Complaint, Defendants admit the

District filed a response to the March 17, 2015 Amended Due Process Complaint on March 27, 2015; and, admit CHUH retaliated against Ayan and Defendants by threatening, harassing and intimidating Ayan and Defendants by placing Ayan and Defendants on notice of the District's intent to seek fees without doing any investigation into the allegations of the DPC prior to issuing the response as evidenced through the testimony of Jeff Johnston during the administrative hearing and recorded in the transcript. *See* 12/18/15 Tr. pg(s)190-243; Doc #: 1-11, PageID #(s): 124, 126, 128-129. Further answering, Defendants deny all other allegations alleged in Paragraph 23 of the Complaint.

24. Defendants admit Ayan was not yet identified as, and the District denied suspecting Ayan to be, a child with a disability at the time Defendants filed either the original or Amended Due Process Complaint; and, Defendants admit neither Ayan nor his parent previously asked for an evaluation, however, the IHO determined a multi-factored evaluation was requested through the DPCs. Doc #: 1-11, PageID #: 146. Further answering, Defendants deny all other allegations set forth in Paragraph 24 of the Complaint.

25. Defendants admit, the team, including Ayan's parent, met to consider whether it suspects a disability under the IDEA, warranting a special education evaluation for Ayan on or about March 17, 2015; and, Defendants admit to being delayed to the meeting. Further answering, Defendants deny all other allegations set forth in Paragraph 25 of the Complaint.

26. Defendants admit the District stated it did not suspect Ayan had a qualifying IDEA disability requiring an evaluation at the March 24, 2015 meeting; and, admit His instructors reported that Ayan was focused, interacted well with classmates, and was on track to completing all coursework needed for graduation. Further answering, Defendants

deny all other allegations of Paragraph 26 of the Complaint.

27. Defendants admit the District claimed it did not suspect Ayan had a qualifying IDEA disability; and, Defendants admit the District did suspect a disability under Section 504 and agreed to meet again to discuss said disability. Further answering, Defendants deny all other allegations of Paragraph 27 of the Complaint.

28. Defendants admit the team met and decided to conduct a Section 504 evaluation on or about April 21, 2015 finding Ayan's disabilities "adversely affect" his education. *See attached* Exhibit 1. Further answering, Defendants deny all other allegations of Paragraph 28 of the Complaint.

29. Defendants admit the District found Ayan met his graduation requirements in May of 2015, and Ayan was provided his diploma on June 1, 2015. Defendants deny all other allegations set forth in Paragraph 29 of the Complaint.

30. Defendants admit Doc #(s): 1-9 and 1-10 speak for themselves. Further answering, Defendants deny all other allegations set forth in Paragraph 30 of the Complaint.

31. Defendants deny the allegations set forth in Paragraph 31 of the Complaint.

32. Defendants admit Ayan presented the diploma when enrolling in college. Further answering, Defendants deny all other allegations set forth in Paragraph 32 of the Complaint.

33. Defendants admit they requested attorneys' fees and, policy and procedural change as permitted by law. Defendants deny all other allegations set forth in Paragraph 33 of the Complaint and point to the IHO's statement "The Court decided that a party's claim for relief can bar a claim of mootness, and held that a party's claim for attorney's fees or compensatory damages bars dismissal for mootness. While an IHO cannot award

compensatory damages or attorney's fees, the IDEA and Ohio's Operating Standards make clear that a petitioner may be awarded attorney's fees by a court when the petitioner is the prevailing party. O.A.C. Sec. 3301-51-05(K)(18)(a). If a petitioner is the prevailing party, that petitioner may then request a court for an award attorneys' fees. That opportunity to receive an award of attorneys' fees is clearly relief that would make a difference in the legal interest of the parties."  Doc #: 1-11, PageID #: 162.  Further, the Defendants were required to exhaust IDEA administrative remedies prior to bringing a claim on behalf of their clients under Section 504 of the Rehabilitation Act pursuant to 20 USC 1415(l).  Last, Defendants indicate there was nothing frivolous about the due process complaint, but the current action against Bache and Wallace is wholly frivolous and retaliatory.

34. Defendants admit the District filed a response to the June 7, 2015 Amended Due Process Complaint on or about June 17, 2015, stating the District's intent to seek fees. Further answering, Defendants deny all other allegations of Paragraph 34 of the Complaint.

35. Defendants admit the Respondent would not consent to the IHO having jurisdiction over the 504 issues, attempting to cause unnecessary delay and expense to Ayan, and that "The IHO also ruled more than once during this hearing that evidence pertaining to Petitioner's claims under any other federal law that protects the rights of a child with a disability were admissible under 20 U.S.C. Sec. 1415(1) for purposes of allowing the Petitioner to exhaust his administrative remedy as required by that Section 1415(1)" Doc #: 1-11 PageID: 147. Further answering, Defendants deny all other allegations set forth in Paragraph 35 of the Complaint.

36. Defendants deny the allegations set forth in Paragraph 36 of the Complaint.

37. Defendants deny the allegations set forth in Paragraph 37 of the Complaint.

38. Defendants deny the allegations of Paragraph 38 of the Complaint.

39. Defendants admit a *Motion for Adverse Inference Due to Spoliation of Evidence or Missing Evidence* was filed. Further answering, Defendants deny all other allegations of Paragraph 39 of the Complaint.

40. Defendants admit the *Petitioner's Objection to All Prehearing Motions and Order*s was filed on or about On January 4, 2016, Defendants filed. Further answering, Defendants deny all other allegations set forth in Paragraph 40 of the Complaint.

41. Defendants admit the *Notice of Intent to Seek Reimbursement of Costs* was filed on or about January 4, 2016. Defendants deny all other allegations set forth in Paragraph 41 of the Complaint.

42. Defendants deny the allegations set forth in Paragraph 42 of the Complaint.

43. Defendants admit the IHO's decision was issued September 24, 2016. Further answering, Defendants deny all other allegations of Paragraph 43 of the Complaint.

44. Defendants admit Paragraph 44 of the Complaint.

45. Defendants admit Ayan testified that Defendants filed the Amended Due Process Complaint and Second Due Process Complaint on his behalf. Further answering, Defendants deny all other allegations of Paragraph 45 of the Complaint.

46. Defendants admit Ayan stated, "When I think of a disability… I think of the – short bus." Further answering, Defendants deny all other allegations set forth in Paragraph 46 of the Complaint.

47. Defendants admit Ayan stated that he was depressed; and, Defendants admit Ayan stated he hid this condition from his friends and teachers, both in Utah and Cleveland Heights. Defendants deny all other allegations set forth in Paragraph 47 of the Complaint.

48. Defendants admit Ayan testified that despite his depression, he attended parties, movies, and outings with his friends both during the week and on the weekends. Further answering, Defendants deny all other allegations set forth in Paragraph 48 of the Complaint.

49. Defendants admit Paragraph 49 of the Complaint.

50. Defendants admit Paragraph 50 of the Complaint.

51. Defendants admit the allegations of Paragraph 51 of the Complaint.

52. Defendants deny the allegations of Paragraph 52 of the Complaint.

53. Defendants deny the allegations set forth in Paragraph 53 of the Complaint.

54. Defendants admit Ayan's stepfather testified that he did not report that Ayan was bullied to any District employee until Ayan's first disciplinary hearing. Further answering, Defendants deny all other allegations set forth in Paragraph 54 of the Complaint.

55. Defendants deny the allegations of Paragraph 55 of the Complaint.

56. Defendants deny the allegations of Paragraph 56 of the Complaint.

57. Defendants deny the allegations set forth in Paragraph 57 of the Complaint.

58. Defendants admit federal and state law requires districts to inform parents of their procedural safeguards, *see "Whose Idea is this?"* Exhibit 2 attached. Further answering, Defendants deny all other allegations set forth in Paragraph 58 of the Complaint.

59. Defendants deny the allegations set forth in Paragraph 59 of the Complaint.

60. Defendants admit Ayan sent a letter to the Options staff. Further answering, Defendants deny all other allegations of Paragraph 60 of the Complaint.

61. Defendants deny the allegations set forth in Paragraph 61 of the Complaint.

62. Defendants admit Paragraph 62 of the Complaint.

63. Defendants admit the IHO issued his Final Decision on September 24, 2016; and, admit

the IHO found in favor of the District. Further answering, Defendants deny all other allegation of Paragraph 63 of the Complaint and point to the IHO's determination the District had reason to suspect Ayan might have a disability stating, "For the reasons set forth above the IHO finds that the Petitioner proved by a preponderance of the evidence that the Respondent had reason to suspect on March 16, 2015 that the Student might be a child with a disability." Doc #:1-11 PageID: 188.

64. Defendants deny the allegations of Paragraph 64 of the Complaint.

65. Defendants admit the IHO noted that Ayan's testimony established was distracted in class. Further answering, Defendants deny all other allegations of Paragraph 65 of the Complaint.

66. Defendants admit Paragraph 66 of the Complaint.

67. Defendants admit the IHO found that Ayan passed all the courses required to graduate, as well as the Ohio Graduation Tests.  Further answering, Defendants deny all other allegations of Paragraph 67 of the Complaint.

68. Defendants deny Paragraph 68 of the Complaint and point to Doc #1-11 PageID #: 204 where the IHO states the "threat of sanctions" statements "did not constitute retaliation **that denied the Petitioner a FAPE**" (emphasis added), therefore he found them to be retaliatory statements.

69. Defendants admit Paragraph 69 of the Complaint.

70. Defendants admit Paragraph 70 of the Complaint.

71. Defendants deny Roderick Linton Belfance LLP provided Defendants Wallace and Bache with malpractice insurance coverage that adequately covered the known areas of practice Wallace and Bache worked in. Further answering, Defendants admit all remaining

allegations of Paragraph 71 of the Complaint.

72. Defendants admit Paragraph 72 of the Complaint.

73. Defendants admit there was an incomplete website in development which was inadvertently accessible to the public and admit Doc #: 3-1 speaks for itself. Further answering, Defendants deny all other allegations of Paragraph 73 of the complaint.

74. Defendants admit they were associates at Roderick Linton and Belfance LLP. Further answering, Defendants deny all other allegations of Paragraph 74 of the complaint.

75. Defendants admit Defendants Wallace and Bache appealed the IHO's decision on November 11, 2016, to a State Level Review Officer ("SLRO") appointed by the Ohio Department of Education. Further answering, Defendants deny all other allegation of Paragraph 75 of the Complaint.

76. Defendants admit Paragraph 76 of the Complaint.

77. Defendants' admit claims regarding the rules of evidence and authentication were raised on appeal to the SLRO as the SLRO is required to ensure that the procedures at the hearing were consistent with the requirements of due process pursuant to OAC 3301-51-05(K)(14)(b)(iii)(b). Further answering, Defendants deny all other allegations of Paragraph 77.

78. Defendants admit SLRO Mues issued a Final Decision and Entry ("SLRO Decision") on January 25, 2017; and, admit the SLRO upheld the Final Decision of the IHO in its entirety. Further answering, Defendants deny all other allegations of Paragraph 78.

79. Defendants deny the allegations set forth in Paragraph 79 of the Complaint, this allegation is conclusory.

80.  Defendants deny the allegations set forth in Paragraph 80 of the Complaint.

81. Defendants deny the allegations set forth in Paragraph 81 of the Complaint.

82. Defendants deny the allegations set forth in Paragraph 82 of the Complaint.

83. Defendants deny the allegations set forth in Paragraph 83 of the Complaint and attach the following legal authority to support arguments they made at the due process hearing.

84. Defendants deny the allegations set forth in Paragraph 84 of the Complaint.

85. Defendants admit the allegations set forth in Paragraph 85 of the Complaint.

86. Defendants deny the allegations set forth in Paragraph 86 of the Complaint for lack of knowledge.

87. The Defendants admit the District was obligated, pursuant to O.A.C.§ 3301-51-05(K)(16)(d), to compensate the IHO for his time and expenses in presiding over the proceedings, for a total of approximately $58,000.00

88. Defendants admit the District was obligated, pursuant to O.A.C.§ 3301-51-05(K)(16)(a), to pay the cost of the court reporter in relation to the proceedings, for a total of approximately $22,000.00.

89. Defendants deny the allegations set forth in Paragraph 89 of the Complaint.

90. Defendants deny the allegations set forth in Paragraph 90 of the Complaint, further answering, 28 U.S.C. § 1920 does not provide for the taxing of costs under the IDEA administrative proceedings as alleged by Plaintiff.

91. Paragraph 91 requires no response.

92. The Defendants deny the allegations set forth in Paragraph 92 of the Complaint, this allegation is conclusory.

93. Defendants deny the allegations set forth in Paragraph 93 of the Complaint.

94. Defendants deny the allegations in Paragraph 94 of the Complaint that they failed to

conduct a reasonable inquiry into the merits of the claims prior to filing and amending the Due Process Complaints and further indicate that it was the District that failed to conduct a reasonable inquiry into Ayan's needs prior to refusing to evaluate him for a disability and threatening him for seeking to enforce his rights.

95. Defendants deny the allegations set forth in Paragraph 95 of the Complaint

96. Defendants deny the allegations set forth in Paragraph 96 of the Complaint.

97. Defendants deny the allegations set forth in Paragraph 97 of the Complaint.

98. Defendants deny the allegations set forth in Paragraph 98 of the Complaint. Further answering, Defendants point to IHO's statement "Nor was there any evidence that Petitioner's SE 3057 Complaint was presented for any such improper purpose." Doc #: 1-11, PageID #: 203.

99. Paragraph 99 requires no response.

100. Defendants Wallace and Bache admit to working as associates at Roderick Linton Belfance LLP during the relevant time periods. Further answering, Defendants deny all other allegations set forth in Paragraph 100 of the Complaint.

101. Defendants deny the allegations set forth in Paragraph 101 of the Complaint

102. Defendants deny the allegations set forth in Paragraph 102 of the Complaint

103. Defendants deny the allegations set forth in Paragraph 103 of the Complaint.

## **AFFIRMATIVE DEFENSES**

104. Defendants restate Paragraphs 1 through 103 of their Answer to the Complaint.

105. Defendants, Jason D. Wallace, and Daniel R. Bache, affirmatively state that the claims they presented on behalf of the student, Ayan Burton, were not frivolous, unreasonable, or without foundation, and that some evidence supported the claims.

106. Plaintiffs have not been determined to be the prevailing party in the Administrative Proceedings referred to in Plaintiffs' Complaint.

107. Defendants, Jason D. Wallace, and Daniel R. Bache, assert that they are required to exhaust their administrative remedies under IDEA before seeking additional relief under Section 504. 20 U.S.C. § 1415(l).

108. Defendants reserve the right to present such additional affirmative defenses as may become known pending discovery.

**IMPROPER PARTY**

109. Defendants restate Paragraphs 1 through 108 of their Answer to the Complaint.

110. Plaintiffs have improperly named Wallace & Bache LLC as a party-Defendant to this action.

**STANDING**

111. Defendants restate Paragraphs 1 through 110 of their Answer to the Complaint.

112. Plaintiffs lack standing.

**FAILURE TO STATE A CLAIM**

113. Defendants restate Paragraphs 1 through 112 of their Answer to the Complaint.

114. Plaintiffs' Complaint fails to state a claim against Defendants upon which relief can be granted.

**STATUTE OF LIMITATIONS**

115. Defendants restate Paragraphs 1 through 115 of their Answer to the Complaint.

116. The applicable statute of limitations bars Plaintiffs' claims.

## FAILURE TO MITIGATE

117. Defendants restate Paragraphs 1 through 117 of their Answer to the Complaint.

118. Plaintiffs failed to mitigate any damages that they now seek by way of the Complaint.

## EXHAUSTION

119. Defendants restate Paragraph 1 through 118 of their Answer to the Complaint.

120. Defendants were required to exhaust their administrative remedies in an IDEA administrative due process hearing prior to initiating a complaint in federal court regarding a disability claim under the Americans with Disabilities Act or Section 504 of the Rehabilitation Act.  20 U.S.C. § 1415(l).

## LACK OF SUBJECT MATTER JURISDICTION

121. Defendants restate Paragraph 1 through 121 of their Answer to the Complaint.

122. Plaintiffs cannot show they have this Court has Subject Matter Jurisdiction over the claim under 20 U.S.C. § 1415(i)(3)(B) because the IHO clearly states "Nor was there any evidence that Petitioner's SE 3057 Complaint was presented for any such improper purpose." Doc #: 1-11, Page ID#: 203.

## COUNTERCLAIM

Defendants, Daniel Bache and Jason Wallace, for their Counterclaim against Plaintiff, Cleveland Heights-University Heights School District Board of Education ("CHUH"), state as follows:

1.  Each Paragraph in the Answer and Counterclaim incorporate all others.

## I.    JURISDICTION AND VENUE

2.  This action arises under Section 504 of the Rehabilitation Act of 1973, 28 U.S.C. §794

("504").

3. Jurisdiction is conferred upon the Court by 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3) and (4).

4. Venue is proper in this District, pursuant to 28 U.S.C. §1391(b), because a substantial portion of the events or omissions giving rise to the claims occurred in this District; Plaintiff resides, transacts business, and has agents within this District; and all the events that are the subject of this complaint occurred within the jurisdiction of this District.

5. Defendants must bring this counterclaim pursuant to Fed. R. Civ. P. 13.

## II.    PARTIES

6. Defendant, Daniel Bache is an attorney of law, licensed to practice in Ohio since 2010, is currently in good standing, and is a resident of Summit County, Ohio.

7. Defendant Bache engages in practice in the area of civil rights law and matters under the Individuals with Disabilities Education Act ("IDEA"), on behalf of disabled children and families with children who are disabled.

8. Defendant, Jason Wallace is an attorney of law, licensed to practice in Ohio since 2013, is currently in good standing, and is a resident of Cuyahoga County, Ohio.

9. Defendant Wallace engages in practice in the area of civil rights law and matters under the Individuals with Disabilities Education Act, on behalf of disabled children and families with children who are disabled.

10. Plaintiff CHUH is a public school operating under the laws of Ohio.

11. Plaintiff CHUH is a political subdivision capable of suing and being sued under federal and Ohio laws. Defendant CHUH operates the school district that has administrative control over all educational programs conducted, including special education and related services,

within its jurisdiction and is therefore a "Local Educational Agency" or "LEA" as that term is defined in IDEA. Defendant CHUH receives federal funds pursuant to part B of the IDEA and Section 504.

### III. FACTUAL BACKGROUND

12. Defendants Bache and Wallace entered into a representation agreement with Ayan Burton and his family, including H.S. and Amiya Burton in late 2014 regarding problems they were having with and at CHUH.

13. Defendants Bache and Wallace discovered civil rights violations and violations of the IDEA for all of the Burton-Scott children attending high school at CHUH.

14. Defendants Bache and Wallace advised the Burton Scott family on how to get assistance from CHUH.

15. Because CHUH was non-responsive, failed to even respond to the multiple requests for help from the Burton-Scott family, and after adequate time for an appropriate independent investigation of the problems at CHUH, Defendants Bache and Wallace initiated administrative IDEA due process hearings on behalf of the Burton-Scott family against CHUH for the civil rights violations and the violations of the IDEA.

16. The IHO of the underlying due process hearing indicated specifically that he did not believe the due process complaint was filed for an improper purpose.

17. Many facts were developed throughout the demonstrative hearing that showed the Defendant's assertions regarding CHUH were either true or were reasonably made.

18. Some of the information that formed the basis of the due process complaint or that was established during the underlying due process hearing were:

a. Ayan Burton has had numerous struggles throughout his young life.

b. Ayan was a victim of domestic violence for thirteen years, from birth until his biological parents' divorce.

c. Ayan enrolled at CHUH in September of 2014 as a general education student in the twelfth grade.

d. Ayan had previously been a student at multiple other schools in multiple other settings, including being home schooled.

e. On or about January 16, 2013, Ayan was diagnosed with depressive disorder by mental health professionals at Aloha Behavioral Consultants, Inc.

f. On October 27, 2013, Ayan's close family friend committed suicide due to being bullied at school, which caused Ayan additional emotional distress and exacerbated Ayan's previous mental health diagnosis.

g. Ayan received counseling from a mental health professional following his friend's suicide.

h. Upon entering CHUH, Ayan had performed very poorly at his previous school and failed approximately twenty-one (21) courses and received many D's over the previous eight grading periods he attended school.

i. Ayan was bullied mercilessly by other students at CHUH almost immediately upon enrollment based upon protected characteristics such as race, religion, and disability and CHUH staff was aware of the bullying.

j. While walking around the halls at CHUH, Ayan would often hear students calling other students "niggers."  CHUH staff members were near these students as they were saying this and never intervened or stopped these actions.

k.  After the end of the first quarter at CHUH, Ayan earned two F's, 2 D's, 1 C, 1 B, and 1 A.

l.  Ayan had thirty-two (32) class absences and fourteen (14) tardies and a grade point average of 1.8571 after his first quarter at CHUH.

m.  Ayan's second quarter progress report indicates he was earning two F's and one C.

n.  Ayan had ninety-two (92) class absences and two (2) tardies and a grade point average of 0.00 after his second quarter at CHUH.

o.  On November 10, 2014, Ayan was involved in an altercation ("Altercation") with two brothers who attended CHUH with him and who regularly bullied him.

p.  These two brothers were taunting Ayan for many weeks at this point and were attempting to provoke a fight.

q.  November 10, 2014, was close to the anniversary date of Ayan's friend's suicide that occurred due to bullying the student suffered.

r.  The students sought to fight Ayan in numerous locations at CHUH and ultimately ended up outside on CHUH property.  Many students were observing the ensuing exchanges between the brothers and Ayan.

s.  CHUH security officers became aware of the fight that was about to take place, and instead of interrupting it, the security officers simply told the students to take it off school property.

t.  On November 10, 2014, the older of the two brothers ("Student 1") involved in the Altercation filed a police report with the Cleveland Heights Police Department ("CHPD") alleging that he was attacked and assaulted by Ayan.

u.  Student 1 made up numerous lies in the police report and those lies ultimately led to Plaintiff being charged with kidnapping, a felony of the first degree, and felonious assault with a weapon, a felony of the second degree.

v.  A student who witnessed the Altercation recorded a video of the incident, and the video was posted on social media. The video was broadcast nationally by multiple media outlets, including CNN and World Star Hip Hop.

w.  One CHUH staff member, Reza Mohasses ("Mr. Mohasses"), Science Teacher, stated in an email to Ms. McKinnie on November 19, 2014: "I never noticed anything out of the ordinary between the two. I can't make a useful statement for you except for what it is in this email."

x.  Later, at the expulsion appeal hearing, Ms. McKinnie testified that Mr. Mohasses told her, contrary to his statement via email, that he had disciplined certain students, but he had chosen not to report the disciplinary incidents to the office.  This statement made by Ms. McKinnie was recorded.

y.  Ayan gave a statement on November 20, 2014 regarding the bullying that he was subjected to by Student 1.

z.  In this statement, Ayan described that: he was continuously the target of bullying by Student 1 since the second week that he attended CHUH; Student 1 would repeatedly take Ayan's belongings including his earphones, food, sweater, and book bag; Student 1 would slap Ayan on the neck; Student 1 would call Ayan by the wrong name after Ayan repeatedly asked him to stop; Student 1 would tell Ayan he was too old to be in school; Student 1 would make fun of Ayan's beard he wore due to his religious beliefs; Student 1 would tell Ayan he was not a real black man or "nigger"

because he had red hair; Student 1 would tell Ayan he wasn't a real black man or "nigger" because he was too light skinned; and, Student 1 would call Ayan a "nigger," a "pussy," and a "punta."

aa. In this statement, Ayan stated: his third period class with Mr. Mohasses was where most of the bullying occurred; Mr. Mohasses was aware of the bullying that Ayan was subjected to; Mr. Mohasses told Ayan to ignore the bullying; and, Mr. Mohasses never told Student 1 to stop bullying Ayan.

bb. CHUH staff members, including but not limited to Mr. Mohasses, Ms. McKinnie, Reginald Williams, and security personnel, failed to follow the School's policies, procedures, and protocols when notified of the ongoing bullying being suffered by Ayan.

cc. Ayan and other students gave statements attesting that the CHUH security officer did not attempt to stop the two students from fighting, but only told the students to take the fight to another location.

dd. On November 24, 2014, Ayan's mother sent an email to a CHUH teacher, Melissa Strouth, to inform her that Ayan was having difficulty completing his assigned schoolwork while serving his suspension from school, and she requested assistance for Ayan with his schoolwork when he returns from the suspension.

ee. Ayan's expulsion hearing took place on November 24, 2014. At this hearing, Ms. McKinnie acknowledged: Ayan felt like he was being harassed; the boys bullying Ayan were "[p]robably going a little bit too far"; "* * *no one in the school thinks that [Ayan] is a bully"; no one is denying that Student 1 was harassing Ayan; she is not sure how she would react if someone treated her in the manner that Ayan had

been treated; and, a CHUH teacher told her that Student 1 was sent out of class for similar unacceptable behavior in the past.

ff.  Ayan stated at the expulsion hearing that Student 1 had made comments about Ayan being black with red hair, told him that he is not black, he's light-skinned, and told Ayan that he is a "black ginger."  Ayan also indicated he was being bullied in other ways and told stories and gave examples of it.

gg. Mr. Williams acknowledged at the expulsion hearing that the constant and inflammatory nature of the harassment Ayan was subjected to caused Ayan to react the way he did during the Altercation.

hh. Mr. Williams indicated that the "Heights" is a rough place and Ayan will never be black enough for the "Heights."

ii.  Statements by CHUH classmates of Ayan, after the Altercation, support that Student 1 had made comments to Ayan regarding his skin and hair color. Also, that Student 1 had verbally threatened Ayan in a CHUH classroom and other places multiple times, and he told the Ayan he would physically assault him.

jj.  The expulsion letter contained conditions that Ayan must meet before he would be allowed to return to school. These conditions included: (1) Ayan must obtain anger management counseling at his or his parents' expense; and (2) a parent/guardian of Ayan must sign an Authorization to Release/Receive Educational Records and/or Communicate with Outside Agencies/Individuals form permitting the school district to receive all information relating to the anger management counseling.

kk. During Ayan's expulsion period, Ayan was not permitted to attend CHUH regular school, to be on any school-titled property, nor take part in any function promoted or

23

sponsored by the school district. Such presence would have constituted trespassing and Ayan would have been arrested according to CHUH.

ll. On December 9, 2014, Ayan was seen by Dr. Steve Bell, Ph.D., LPCC, because Ayan was suffering from PTSD like symptoms which triggered him to react the way he did during the Altercation. Ayan was experiencing anxiety and depression. Ayan had complaints of "[c]onsiderable anxiety leading to being hypervigilant and difficulty in concentration."

mm. Ayan's parents sent a request for Ayan's records to Ms. McKinnie via email on December 22, 2014.

nn. Despite only having forty-five (45) days at the longest to produce records in response to Ayan's request for educational records, CHUH did not respond until some point in March 2015, and did not produce all the documents at that time.

oo. A medical document dated December 27, 2014, from Dr. Steve Bell, Ph.D., LPCC, shows that Ayan had a history of early trauma that was violent in content, and that he suffers from International Classification of Diseases ("ICD") Code (309.4) Adjustment Disorder with Mixed Disturbance of Emotions and Conduct.

pp. On January 26, 2015, (Forty-six (46) days after Ayan's expulsion appeal was filed) Ayan's parents were forced to again contact the school regarding an appeal hearing because the school had not taken any action to schedule a hearing.

qq. A Due Process Complaint and Request for Due Process Hearing was filed by Ayan on February 9, 2015. This Complaint alleged that Ayan: had been denied FAPE; was out of school for more than 10 days without services; was denied a manifestation hearing; had been subjected to severe harassment and bullying due to his protected status; had

been denied Due Process; had been subjected to rules and regulations that do not apply to a student with a disability; and, had been denied student records.

rr. CHUH issued a PR-01 Prior Written Notice to Parents on February 23, 2015. In this document, CHUH labeled Ayan as a "bully," and alleged that Ayan was attempting to hijack special education law to shield himself from consequences of his involvement in the Altercation. This notice came after Ms. McKinnie stated "unequivocally" that no one at the school thought that Ayan was a bully, and after the school had been presented with medical documentation showing that Ayan had a mental health diagnosis.

ss. Despite learning at the expulsion hearing that Ayan "saw red" and "snapped," that Ayan's family friend committed suicide, that Ayan had been subjected to domestic violence, that Ayan's family was in a state disarray with the current events surrounding their lives, and this being re-affirmed at the expulsion appeal hearing, CHUH did nothing to investigate these issues, the effect the expulsion, bullying, arrest, trauma, or anything else had on Ayan.

tt. Being bullied or being a bully, are both triggers to potentially evaluate a student to determine if there is a need for special education and related services.

uu. In the PR-01 of February 23, 2015, indicated CHUH was unaware of any medical, academic, or social-emotional reasons Ayan should be evaluated for special education or related services because Ayan's parents did not tell CHUH of these issues.

vv. The burden to locate, identify, and evaluate all students who reside within CHUH's jurisdiction and who may need special education and related services is solely CHUH's responsibility.

ww.  The PR-01 of February 23, 2015 contained highly inflammatory and inaccurate language and included a threat that CHUH would seek fees against Ayan's parents or his attorneys if his parents did not dismiss the due process complaint.

xx. The PR-01 of February 23, 2015 contained no other specific quotes or citations regarding any of Ayan's IDEA procedural safeguards and did not contain 504 procedural safeguards either.

yy. The PR-01 of February 23, 2015 contained a statement that CHUH reviewed Ayan's school records, grades, teacher comments, parent correspondence, and disciplinary notices as the description of other options that the IEP team considered and the reasons why those

zz. Dr. Johnston, the person who is held out to have created the PR-01 of February 23, 2015, by way of his signature, testified that he did not create the PR-01, did not adequately investigate if Ayan had medical, academic, or social-emotional reasons to be evaluated for special education and related services, did not meet with teachers prior to the creation of the document, did not review Ayan's educational records, did not review Ayan's expulsion proceeding, did not ask Ayan's teachers if they thought he was a bully, and did not even bother asking Ayan or his family why the felt he was disabled prior to creating the PR-01 or prior to issuing the threat and attempting to chill protected activity.

aaa.  On February 24, 2015, Jeffrey Johnston, CHUH Director of Student Services, sent an email to various members of the CHUH staff notifying them that Ayan's parents were concerned about Ayan's safety in the community.

bbb.    At the expulsion appeal hearing, Ms. McKinnie acknowledged that she was shocked to hear that Ayan had been involved in a fight. Mrs. McKinnie also acknowledged that Ayan had told her he felt as though he had been bullied.

ccc.    In the expulsion decision by CHUH, In that decision, Mr. Wilkerson wrote—in direct conflict with Ms. McKinnie's testimony— that Ms. McKinnie concluded "* * * teasing and/or harassment may have occurred (which was mutual) * * *."

ddd.    The harassment was not mutual. Multiple times, including during the expulsion appeal hearing, Ms. McKinnie stated that Ayan is not a bully and does not bother other students.

eee.    Ayan was forced into an alternative school setting by CHUH, where he would be taught via online instruction in a classroom that had only a couple instructors available to its students.

fff. While enrolled at the alternative school, Ayan was taking English 2 semester 2, English 4 semester 1, English 4 semester 2, Algebra 1 semester 2, Algebra 2 semester 1, Algebra 2 semester 2, trigonometry, and pre-calculus simultaneously.  CHUH reported that Ayan only earned one grade for all of these courses for the third grading period.

ggg.    CHUH reported on the fourth grading period mid quarter progress report that Ayan had three grades that were in progress and nothing else was reported.

hhh.    CHUH indicated that Ayan managed to complete these courses in less than two grading periods, master the academic content, and earn all B's, C's, and one A for these courses in the fourth grading period.

iii. Ayan did not master the content or learn the material for his courses he was enrolled in during the second semester at CHUH.

jjj. CHUH "gave" Ayan the grades he needed for graduation in effort to push him out of school.

kkk.    Since Ayan was not provided proper instruction, he was not able to successfully complete post-secondary education work.

lll. Ayan and his family expressed concern for Ayan's safety going to and from CHUH due to the threats directed at him and his family.

mmm. CHUH failed to offer a remedy to the fears and concerns of Ayan's safety coming to and from CHUH.

nnn.    The alternative setting only provided a few hours a day of classroom instruction, as opposed to the approximately eight-hour school day other students received.

ooo.    Ayan did not learn the material while in the alternative setting and would be allowed to take tests multiple times to "pass" them.

ppp.    When Ayan could not pass the tests in the alternative setting, the instructors would simply tell him the answers.

qqq.    Ayan was not able to attend school in a traditional school setting and was deprived of socialization and other activates that other students were able to be part of.

rrr. CHUH was aware that Ayan was diagnosed with Osgood-Schlatter Disease.

sss. Ayan suffered a knee injury and hurt his ACL prior to enrolling at CHUH and had surgery to attempt to correct it and was still dealing with pain in his knees.

ttt.  Ayan was not academically eligible to play football at CHUH, even if he did not have knee injuries.

uuu.  Dispute being aware of the pain Ayan has walking, CHUH did not Ayan any accommodations or modifications for his knee problems, nor did it offer transportation to school for Ayan even though Ayan's family requested transportation.

vvv.  On March 16, 2015, an Amended Due Process Complaint was filed by Ayan. In this Complaint, Ayan's description of the problem was that he had: been denied FAPE for the 2014-2015 school year; been out of school for more than 10 days without services; been denied a manifestation determination hearing prior to being expelled; been subjected to severe harassment, intimidation, and bullying; been denied Due Process; been subjected to rules and regulations that do not apply to a student with a disability; been denied access to student records; been denied accommodations, related services, specially designed instruction, and protections; and, that the District failed its Child Find obligations.

www.  On March 27, 2015, in a response to the Amended Due Process Complaint, CHUH denied all Ayan's allegations and requested that the Complaint be dismissed immediately, again labeled Ayan as a "bully," and alleged Ayan was attempting to hijack special education law to shield himself from consequences of his involvement in the Altercation.

xxx.  March 30, 2015, a PR-01 Prior Written Notice to Parents was issued by CHUH refusing to initiate an evaluation for Ayan.

yyy.   April 2, 2015, CHUH again issued a PR-01 Prior written Notice to Parents refusing to initiate an evaluation for Ayan.

zzz.   On or about April 14, 2015, CHUH's counsel sent Ayan's attorneys a notice for the family to use a bullying complaint form to report instances of bullying despite CHUH's agents and employees having an affirmative on-going responsibility to report instances of bullying to CHUH administration.

aaaa.   Ayan and his family created bullying complaint forms that were provided by CHUH and CHUH never investigated their allegations.

bbbb.   April 24, 2015, CHUH completed a Section 504 Written Notice to Parents and proposed to initiate a 504 evaluation of Ayan.

cccc.   The 504 evaluation was initiated because Ayan has a mental health diagnoses and reported that his anxiety adversely affected his educational functioning.

dddd.   The Section 504 evaluation was being offered by CHUH because it suspected Ayan had a disability.

eeee.   CHUH never offered Ayan a 504 Plan.

ffff.   Defendant failed to timely evaluate Ayan for a 504 Plan and instead purposely waited until Ayan to leave CHUH that same year.

gggg.   CHUH did not provide Ayan with his procedural rights regarding 504 timely.

hhhh.   At no point did CHUH initiate a bullying investigation or did CHUH staff members fill out a bullying complaint form pursuant to CHUH policy.

iiii.   To attempt to cause Ayan to stop seeking a due process hearing, CHUH filed a Motion seeking Ayan's high school diploma rescinded, despite CHUH not offering

any sort of educational remedies or educational opportunities while seeking to rescind Ayan's diploma.

jjjj. Upon graduation, Ayan sought to enroll in community college.

kkkk.  Ayan did not have the educational tools or knowledge to be successful at the community college and failed all his courses, despite the courses being remedial in nature.

llll. The statistics based upon the courses Ayan tested into at the community college predicted a high probability that Ayan would not finish with a degree from the community college.

mmmm.      Ayan has not been able to obtain gainful employment after high school and is currently unemployed.

nnnn.  Ayan has not able to secure and maintain his own independent housing.

oooo.  Ayan was not taught the appropriate transitional skills to be successfully employed, be prepared for post-secondary education, or to live independently.

pppp.  Ayan continues to struggle post-graduation due to CHUH's failure to ensure he received an appropriate education or the skills to enable him to live independently as an adult.

19. The IHO's decision from the underlying administrative due process hearing was approximately one hundred fifty six (156) pages in length. *See* Doc #: 1-11.

20. CHUH filed at least four (4) Motions to Dismiss during the underlying hearing, all of which were denied.

21. CHUH filed numerous frivolous motions throughout the underlying due process hearing and attempted to make the hearing costlier and longer in effort to "wear-down" the Burton-

Scott family and to give itself an advantage in litigation because it knew the Burton-Scott
family was struggling financially.

22. CHUH retaliated against Ayan by filing a Motion to Rescind Ayan's diploma and when the
IHO indicated on the record CHUH did not need his authority to do so, it failed to follow-up
or seek to redress the educational deficiencies it presented while Ayan's was enrolled in its
school.

23. CHUH's retaliation against Ayan is apparent since it eventually conceded in sworn
testimony that it felt Ayan was in fact disabled yet it never evaluated him for a disability
plan and fought tooth and nail throughout the underlying due process proceedings in effort
to convince the IHO that Ayan was not disabled.

24. CHUH's Dr. Johnston indicated he agreed with the team's conclusion that the Petitioner's
associated behaviors and reported anxiety adversely affected Ayan's educational
functioning.

25. CHUH has engaged in a pattern or retaliation against the Burton-Scott family and their
attorneys.

26. Ayan's brother, H.S., and sister, Amiya Burton sought evaluations due to their disabilities
and CHUH refused to provide evaluations to them as well, despite their failing grades, poor
attendance, history of traumatic events, and documented mental health diagnoses.

27. In addition to the administrative due process Complaint filed by Ayan Burton through
Defendants Bache and Wallace, the Burton-Scott family filed administrative due process
complaints on behalf of H.S. and Amiya Burton through Bache and Wallace as well.

28. Ayan Burton's, H.S.'s, and Amiya Burton's administrative due process complaints all

reference Section 504 of the Rehabilitation Act of 1973 since disabled students and their families must exhaust administrative remedies under the IDEA pursuant to 20 USC 1415(l) prior to bringing a lawsuit under Section 504 of the Rehabilitation Act of 1973 against their school.

29. CHUH even threatened Ayan's parents and their attorneys related to his sister's due process complaint as well in effort to put pressure on the family to cease attempting to assert their legal rights.

30. CHUH has indicated over and over again that the only reason the Burton-Scot family sought help through the IDEA due process system was to provide them leverage for Ayan's disciplinary proceedings, yet, CHUH lost the administrative hearing for Ayan's sister Amiya.

31.   In addition to the instant lawsuit against Ayan's attorneys, Defendants Bache and Wallace, CHUH initiated a lawsuit alleging basically the same things as contained in the instant Complaint in the case regarding Ayan's brother, H.S, in *Cleveland Heights-University Heights Board of Education v. Wallace, et al*., 5:17-cv-00553-CAB.

32. The Complaints filed against Defendants Bache and Wallace by CHUH were brought only in effort to retaliate against them due to their advocacy for disabled children and their families, to chill protected activities, and to give CHUH an "upper-hand" in litigation since there was not any indication in any of the due process hearings between CHUH and the Burton-Scott family that even a portion of a claim was frivolous or brought for an improper purpose.

33. The Complaints filed against Defendants Bache and Wallace by CHUH are wholly frivolous, unreasonable, without any merit or foundation, and were presented for an

improper purpose.

## IV.    STATUTORY FRAMEWORK

34. Individuals with disabilities are protected under 34 C.F.R. § 104.4(b)(4) of the regulations

implementing Section 504 of the Rehabilitation Act of 1973 29 U.S.C. § 794 ("Section

504"), which states:

> A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishments of the objectives of the recipient's program with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same state.

35. 34 C.F.R. § 104.34(a) and (b) of the regulations implementing Section 504 states:

> A recipient to which this subpart applies shall educate, or shall provide for the education of, each qualified handicapped person in its jurisdiction with persons who are not handicapped to the maximum extent appropriate to the needs of the handicapped person. A recipient shall place a handicapped person in the regular educational environment operated by the recipient unless it is demonstrated by the recipient that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily. Whenever a recipient places a person in a setting other than the regular educational environment pursuant to this paragraph, it shall take into account the proximity of the alternate setting to the person's home.

> In providing or arranging for the provision of nonacademic and extracurricular services and activities, including meals, recess periods, and the services and activities set forth in 104.37(a)(2), a recipient shall ensure that handicapped persons participate with nonhandicapped persons in such activities and services to the maximum extent appropriate to the needs of the handicapped person in question.

36. 34 C.F.R. § 104.33(a) and (b) of the regulations implementing Section 504 states:

> A recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.

> For the purpose of this subpart, the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of 104.34, 104.35, and 104.36.

37. Section 504 of the Rehabilitation Act of 1973's anti-retaliation regulation states:

> Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purposes of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder. 34 C.F.R. § 100.7(e).

38. The anti-retaliation provision extends protection to those who advocate on behalf of individuals with disabilities. *See Weber v. Cranston Sch. Comm.*, 32 IDELR 141 (1st Cir. 2000); see also *Popovich v. Cuyahoga Cty. Court of Common Pleas*, Domestic Relations Div., 150 F. App'x 424, 427–28 (6th Cir. 2005) (holding associative discrimination claims under the ADA and Section 504 are viable).

39. "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Id. (quoting Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

## V.    CLAIM

### COUNT I

### Retaliation (Section 504 of the Rehabilitation Act of 1973)

40. CHUH retaliated against Defendants Bache and Wallace in violation of Section 504 of the Rehabilitation Act of 1973.

41. Defendants Bache and Wallace advocated for disabled children and their families, and

otherwise engaged in protected activities for said individuals.

42. CHUH was aware of Defendant Bache and Wallace's engagement of protected activities on behalf of disabled individuals and their families.

43. CHUH filed suit against Defendants Bache and Wallace because of their advocacy and engagement in protected activities on the behalf of individuals with disabilities and their families, thereby causing Defendants Wallace and Bache to suffer an adverse action, or materially adverse action.

44. Defendants Bache and Wallace filed administrative due process complaints, sought Section 504 hearings, challenged CHUH's disciplinary due process violations, and initiated federal lawsuits against CHUH for the Burton-Scott family; specifically, Ayan Burton, H.S., and Amiya Burton.

45. At the time of the threats issued by CHUH and the instant lawsuit, CHUH was aware that Defendants Bache and Wallace represented Ayan Burton, H.S., Amiya Burton, and the Burton-Scott family in civil rights litigation and state and federal disability laws.

46. There is a causal connection between Defendants Bache and Wallace's advocacy and engagement in protected activities and the adverse, or materially adverse action taken against Bache and Wallace by CHUH.

47. Defendants Bache and Wallace's advocacy and engagement in protective activities for individuals with disabilities and their families is the "but for" cause of the adverse or materially adverse action taken against them by CHUH.

48. Defendants Bache and Wallace have been harmed economically, socially, professionally, and emotionally due to the retaliatory conduct of CHUH.

49. Due to CHUH's actions, Bache and Wallace suffered irreparable harm to their reputations, pain and suffering, emotional harm and distress, lost income, increased insurance rates, and more.

## **RELIEF**

WHEREFORE, Defendants Bache and Wallace respectfully asks this Honorably Court grant the following relief against CHUH for its illegal retaliatory actions:

A. Declaratory relief in the form of a judgement indicating that CHUH retaliated against Defendants Wallace and Bache;

B. Compensatory and consequential damages in excess of $100,000, along with interest, for Defendant Bache and Wallace each.

C. Attorneys' fees for defending and prosecuting this action;

D. Plaintiff further requests that additional hours incurred in proceedings before this Court, not yet determined, be included in the final award to Plaintiff. A detailed and itemized statement will be provided; and

E. Such further relief, at law or in equity, to which the Plaintiffs may be entitled or this Honorable Court deems just and proper.

Respectfully submitted,

/s/ *Jason Wallace*
Jason Wallace (Reg. No. 0090167)
270 S. Cleveland Massillon Road
Fairlawn, Ohio 44333
Akron, Ohio 44308-1825
Telephone: 234-466-0829
Fax:  866-573-8377
Email: jason@gethelpohio.com

*Attorney for Defendant Daniel R. Bache*

*/s/ Daniel R. Bache*
Daniel R. Bache (Reg. No. 0086045)
270 S. Cleveland Massillon Road
Fairlawn, Ohio 44333
Akron, Ohio 44308-1825
Telephone: 234-466-0829
Fax:  866-573-8377
Email: dan@gethelpohio.com
*Attorney for Defendants Jason Wallace and*
*Wallace and Bache LLC*

## CERTIFICATE OF SERVICE

A copy of the foregoing Defendants' Wallace, Bache, and Wallace and Bache LLC's

Joint Answer and Counterclaim has been filed this October 2, 2017, through the Court's

electronic filing system.

*Respectfully submitted,*

*/s/ Daniel R. Bache*
Daniel R. Bache (0086045)
270 S Cleveland Massillon Rd
Fairlawn, Ohio 44333
P: 234-466-0829
F: 866-573-8377
Dan@gethelpohio.com
Attorney for Plaintiff